UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

**ROBERT NAMER, ET AL.**                                                     **CIVIL ACTION**

**VERSUS**                                                                              **NO. 15-3060**

**GS LEVINE INSURANCE SERVICES,**                    **SECTION I**
**INC., ET AL.**

### ORDER

The Court has pending before it a motion[1] for summary judgment filed by defendants, GS Levine Insurance Services, Inc.[2] and Arthur J. Gallagher Insurance Brokers of California, Inc. Plaintiffs oppose the motion.[3] For the following reasons, the motion for summary judgment is **GRANTED**.

### BACKGROUND

The above-captioned matter arises out of earlier litigation involving plaintiff, Robert Namer ("Namer"), and an alleged corporate takeover scheme executed by non-parties to this litigation.[4] Having settled with those alleged usurpers,[5] Namer and various corporate entities now pursue supplemental vindication, in this and other related lawsuits, against a host of other parties allegedly in some way involved in the takeover.

---

[1] R. Doc. No. 37.
[2] The answer was filed by "GSL-RA Holdings, Inc., f/k/a GS Levine Insurance Services," R. Doc. No. 17, at 1. No party has attached any legal significance to that circumstance.
[3] R. Doc. No. 44.
[4] *See* R. Doc. No. 11, at 6-10.
[5] R. Doc. No. 11, at 15.

1

In this particular matter, Namer and the other plaintiffs[6] allege that the takeover was facilitated by defendants who are insurance brokers.[7] Defendants' alleged role in the scheme was "to procure dramatic increases in the Insured Companies' insurance coverage limits" and "to improperly back-date these coverage increases" in order to "facilitate" the takeover.[8] Plaintiffs specifically allege that although a letter was written to defendants "stating that there were no known claims involving the subject insurance policies," defendants nonetheless "assisted the Insured Companies in drastically increasing their policy coverage limits, with the knowledge or expectation that a legal fight with Namer (which they were initiating) was about to break out, which would lead to claims being made under one or more of the policies in question."[9] All of this alleged conduct related to the takeover occurred in or around September 2013.[10]

Defendants contend that plaintiffs settled and released such claims. They submit a copy of a document entitled "MUTUAL RELEASE AGREEMENT."[11] The first paragraph of that document states as follows:

> This mutual release agreement ("MRA") is entered into by Robert Namer, individually; by Robert Namer on behalf of RNIE (defined below) and Voice of America, Inc.; American Academy of Pool Designers, Inc., a Nevada corporation; Business Management Information Systems, Inc., a Nevada corporation; IAR Inc., a Nevada corporation; and Pool Vision, Inc., a Nevada corporation (the aforementioned parties are collectively referred to as "GROUP RN"), on the one hand, and GS Levine/Arthur J. Gallagher & Co. ("Releasee"), on the other hand.

---

[6] In the original complaint, Namer was the only named plaintiff. R. Doc. No. 1, at 2. Namer later amended the complaint to add as plaintiffs IAR Company, Business Management Information System, Inc., American Academy of Pool Designers, Inc., and Pool Vision, Inc., all Nevada corporations doing business in Louisiana. R. Doc. No. 11, at 2.
[7] R. Doc. No. 11, at 4, 6.
[8] R. Doc. No. 11, at 7-8.
[9] R. Doc. No. 11, at 7-8.
[10] R. Doc. No. 11, at 6-13.
[11] R. Doc. No. 37-2.

> . . . . The MRA shall become effective on the date that it is signed by Releasee ("Effective Date"). Moreover, the MRA shall be effective regardless of whether all or any of GROUP RN countersigns the MRA signed by Releasee or not.[12]

All named plaintiffs in the above-captioned matter are listed as signatories to the MRA, and Namer signed on behalf of all of them.[13] The MRA releases the following claims:

> Upon the Effective Date, GROUP RN . . . hereby forever release and discharge Releasee . . . of and from any and all known and unknown "Claims" (as defined below), whether suspected or unsuspected, or whether matured or not matured, arising out of or related to any acts, omissions, facts, events, circumstances, or conditions of any kind or nature that existed or transpired on or ***prior to the date this MRA is first executed by GROUP RN.*** "Claims" shall be deemed to include: damages, liabilities, obligations, injuries, losses, costs, and expenses, including attorney's fees; demands; actions; causes of action; lawsuits; rights-contingent, accrued, inchoate or otherwise; debts; dues; bonds; liens; agreements, contracts, promises and covenants–whether oral or written, or executory or performed; and acts.[14]

The MRA submitted by defendants was executed by all plaintiffs on December 31, 2014.[15]

The MRA states that it is effective once counter-executed by the Releasee, provided such execution occurred before January 31, 2015:

> 5. <u>Condition to Effectiveness of Release</u>. This Agreement and the releases set forth in this Agreement shall only be effective and valid if this Agreement is executed by Releasee on or before January 31, 2015. In the event this Agreement is not executed by Releasee on or before January 31, 2015, it shall be void and the releases contained herein ineffective.[16]

Defendants also submit a copy of an addendum executed on March 13, 2015 by Namer and the other plaintiffs extending the deadline to execute the MRA until April 30, 2015:

> **Modification to MRAs:** With respect to each of the MRAs, the undersigned hereby

---

[12]R. Doc. No. 37-2, at 1.
[13]R. Doc. No. 37-4, at 3.
[14]R. Doc. No. 37-2, at 1 (emphasis added).
[15]R. Doc. No. 37-2, at 3.
[16]R. Doc. No. 37-2, at 2, 5.

3

agree to extend the date by which the Releasee," as that term is used in each of the MRAs, must execute the MRA in order for the releases contained therein to be effective, from January 31, 2015 to April 30, 2015. Pursuant to this modification, the releases contained in any MRA signed by a Releasee on or before April 30, 2015 shall be valid and effective pursuant to the remaining terms of the MRAs.[17]

Defendants represent that they received the MRA and addendum together in April 2015, and that they had not received a copy of the MRA before the original expiration date of January 31, 2015.[18] They also submit a copy of a cover letter dated April 7, 2015, explaining the MRA and the addendum and stating that "the MRA is only effective if it is signed by you by April 30, 2015."[19]

Defendants submit a copy of the MRA counter-executed by Gary Levine on April 27, 2015.[20] That copy is identical to the copy executed by Namer on behalf of himself and plaintiffs, except that it reflects a handwritten addition: next to the phrase "GS Levine/Arthur J. Gallagher & Co. ('Releasee')," a handwritten "(1)" refers to handwritten text at the bottom of the page stating "(1) 'Releasee' includes GS Levine Insurance Services, Inc. and Arthur J. Gallagher Insurance Brokers of California, Inc."[21] Although the record contains two copies of the MRA, one executed by Namer and plaintiffs and the other executed by defendants, the MRA itself states that it "may be executed in counterparts and when so executed, may be considered one and the same instrument."[22] Accordingly, the Court will refer to the MRA as a single instrument except where necessary to refer to features specific to a particular counterpart.

---

[17] R. Doc. No. 37-3, at 1. The addendum was also signed by Wayne Jones, counsel for plaintiffs.
[18] R. Doc. No. 56, at 6.
[19] R. Doc. No. 56-1, at 1. The letter was addressed to "ELIGIBLE INDIVIDUAL" and signed by Stephen J. Erigero, Counsel for Blue Haven National Management, Inc. R. Doc. No. 56-1, at 1.
[20] R. Doc. No. 37-2, at 6.
[21] R. Doc. No. 37-2, at 4.
[22] R. Doc. No. 37-2, at 3.

4

## ANALYSIS

**A.     Standard of Law**

Summary judgment is proper when, after reviewing the pleadings, the discovery and disclosure materials on file, and any affidavits, the court determines there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56. "[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The party seeking summary judgment need not produce evidence negating the existence of material fact, but need only point out the absence of evidence supporting the other party's case. *Id.*; *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1195 (5th Cir. 1986).

Once the party seeking summary judgment carries its burden pursuant to Rule 56, the nonmoving party must come forward with specific facts showing that there is a genuine issue of material fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The showing of a genuine issue is not satisfied by creating "'some metaphysical doubt as to the material facts,' by 'conclusory allegations,' by 'unsubstantiated assertions,' or by only a 'scintilla' of evidence." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (citations omitted). Instead, a genuine issue of material fact exists when the "evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party responding to the motion for summary judgment may not rest upon the pleadings, but must identify specific facts that establish a genuine issue. *Id.* The nonmoving party's evidence, however, "is to be believed, and all justifiable inferences are to be drawn in [the nonmoving party's]

favor." *Id.* at 255; *see also Hunt v. Cromartie*, 526 U.S. 541, 552 (1999).

**B.     Analysis**

Pursuant to California law, "a settlement agreement is a contract, and the legal principles which apply to contracts generally apply to settlement contracts." *Weddington Prods. Inc. v. Flick*, 71 Cal. Rptr. 4th 793, 810 (Cal. Ct. App. 1998).[23] "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." Cal. Civ. Code § 1636. "A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect, if it can be done without violating the intention of the parties." Cal. Civ. Code § 1643. "An interpretation which gives effect is preferred to one which makes void." Cal. Civ. Code § 3541.

Defendants' argument in favor of summary judgment is straightforward, grounded in the plain language of the documents, and facially persuasive. All of plaintiffs' allegations in the above-captioned matter arise out of events occurring before December 31, 2014, the date the MRA was executed by Namer and the other plaintiffs. Through the MRA, Namer and all named plaintiffs in the above-captioned matter released all claims arising before December 31, 2014 against "GS Levine/Arthur J. Gallagher & Co." Defendants in this case are GS Levine Insurance Services, Inc. and Arthur J. Gallagher Insurance Brokers of California, Inc. Accordingly, defendants contend that the settlement agreement should be enforced and plaintiffs' claims against them should be dismissed

---

[23]Defendants contend that the MRA, as modified by the addendum, is enforceable pursuant to either California or Louisiana law. R. Doc. No. 37-1, at 5-6. Plaintiffs respond that there is no enforceable settlement pursuant to either California or Louisiana law. R. Doc. No. 44, at 8, 10 & n.16. The Court will analyze the issues pursuant to California law because the parties agree that the outcome of the motion does not turn on which state's law applies, and because the MRA itself expressly refers to a provision of the California Civil Code. R. Doc. No. 37-2, at 1.

6

as barred by the MRA.

Plaintiffs limit their opposition to two issues: (1) whether there was a meeting of the minds as to the identity of the released entities, and (2) whether defendants timely executed the MRA. Plaintiffs do not dispute any other issues, such as the authenticity of the settlement documents submitted by defendants or the circumstances and timing of their submission and execution. The Court will address plaintiffs' arguments in turn.

**1)     Whether There Was a Meeting of the Minds**

Plaintiffs contend that there was no enforceable settlement contract because of the handwritten notation on the copy of the MRA executed by defendants. According to plaintiffs, Namer executed a release of claims against "GS Levine/Arthur J. Gallagher & Co." but Gary Levine attempted to expand the scope of that release to include "two new parties," *i.e.* "GS Levine Insurance Services, Inc. and Arthur J. Gallagher Insurance Brokers of California, Inc," both of which plaintiffs had not agreed to release.[24] In contract terms, plaintiffs assert that there was no meeting of the minds and/or that the handwritten notation on the MRA was a counter-offer never accepted by Namer.[25]

Defendants respond that the notation "simply clarified who the parties being released were by noting their legal names because Plaintiffs inaccurately wrote the parties in shorthand as 'GS Levine/Arthur J. Gallagher & Co.'"[26] They represent that "[t]o Defendants' knowledge, Plaintiffs dealt with no other insurance brokers at the pertinent time–and certainly no other broker by any name like 'GS Levine/Arthur J. Gallagher & Co.'"[27] Defendants point out that although plaintiffs claim

---

[24]R. Doc. No. 44, at 8-9
[25]R. Doc. No. 44, at 9.
[26]R. Doc. No. 56, at 2.
[27]R. Doc. No. 56, at 2.

a lack of any meeting of the minds, plaintiffs fail to address who else the MRA could possibly have been intended to release.[28]

Defendants offer the only plausible interpretation of the MRA and who it releases. The MRA releases "GS Levine/Arthur J. Gallagher & Co." On the record presented to the Court, the only possible entities that language could refer to are the defendants in this case: GS Levine Insurance Services, Inc. and Arthur J. Gallagher Insurance Brokers of California, Inc. There is no indication whatsoever of the existence of any other entities to which "GS Levine/Arthur J. Gallagher & Co." could refer.

Plaintiffs' argument that there was no meeting of the minds is utterly unsupported because plaintiffs fail to articulate who, if not defendants, they intended to release. In order for there to have been a failed meeting of the minds, plaintiffs must raise a genuine issue of material fact with respect to that issue. By releasing "GS Levine/Arthur J. Gallagher & Co.," did plaintiffs intend to release some *other* entities and *not* GS Levine Insurance Services, Inc. and Arthur J. Gallagher Insurance Brokers of California, Inc.? The answer based on the record before this Court is surely, "no." Plaintiffs fail to support any such argument.

Plaintiffs' assertion that the handwritten notation on the copy executed by defendants refers to "*new* parties" is wholly speculative and unsupported by any record evidence establishing who those "new parties" could possibly be. The only reasonable interpretation of the MRA is defendants' interpretation: that the notation on defendants' counterpart merely clarifies the correct legal name of the entities plaintiffs intended to (and did) release: defendants in this case. Any negligible uncertainty relative to who the MRA released, as well as the identities of phantom non-parties

---

[28]R. Doc. No. 56, at 2-3.

8

coincidentally named "GS Levine" and "Arthur J. Gallagher & Co.," does not raise plaintiffs' argument above merely "metaphysical" doubt and such argument does not preclude summary judgment in favor of defendants. *Little*, 37 F.3d at 1075.

### 2) Whether Defendants Timely Executed the MRA

Next, plaintiffs contend that defendants did not execute the MRA in the time required by the plain language of that document. As noted above, paragraph 5 of the MRA required execution by Releasee "on or before January 31, 2015," or else "it shall be void and the releases contained herein ineffective."[29] Also as noted above, the March 13, 2015 addendum signed by Namer and transmitted to defendants extended that signature deadline to April 30, 2015.[30]

Defendants executed their copy of the MRA on April 27, 2015. Accordingly, the enforceability of the MRA depends on the addendum. If the addendum is effective, then the deadline to execute the MRA was April 30, 2015, not January 31, 2015, and defendants timely executed the MRA thereby rendering it effective upon execution pursuant to the plain language of the MRA. If the addendum has no effect, then the execution by defendants of the MRA after January 31, 2015 was ineffective and the MRA is void pursuant to its own terms.

Plaintiffs' attack on the addendum is twofold: they contend that (1) the addendum is an unenforceable unilateral contract, and (2) the addendum only modified some MRAs, listed in Exhibit G, to another settlement agreement between Namer and other parties, and not the MRA in favor of defendants. The Court is not persuaded that either argument precludes summary judgment.

First, plaintiffs contend that the addendum "is a purely unilateral contract that has no other

---

[29] R. Doc. No. 37-2, at 2.
[30] R. Doc. No. 37-3, at 1.

9

party . . . [and] is not supported by consideration of any sort whatsoever."[31] This characterization of the addendum as a separate contract does not withstand scrutiny. On its face, the addendum states that it is "an addendum to certain provisions" and that it results in "modification" of the MRA.[32] It does not contain any language suggesting that it is an offer to Releasee or that it required separate acceptance by the Releasee to be effective; rather the only offer to be accepted by the Releasee is the MRA itself which the addendum merely modifies. Plaintiffs cite no apposite law suggesting that the addendum should be construed as an independent contract requiring separate consideration.[33]

Plaintiffs' suggestion is even less plausible in light of the undisputed course of conduct leading to the execution of the MRA. Plaintiffs do not refute defendants' representation that both the MRA and the addendum to the MRA were transmitted together to defendants for execution in April 2015,[34] after the MRA had expired by its own terms but before the deadline modified and extended by the addendum. The tandem submission of the MRA and addendum to defendants leads to the inescapable conclusion that the documents were intended to be read together and constituted a single offer: an MRA executed by plaintiffs and modified by the addendum pursuant to its plain language. Plaintiffs cite no apposite case law to suggest that separate consideration was required to modify an MRA plaintiffs had not yet sent to defendants, and they submit no other argument or evidence on point.

---

[31] R. Doc. No. 44, at 10 (emphasis omitted).
[32] R. Doc. No. 37-3, at 1.
[33] Pursuant to California law, "[i]n contrast to a bilateral contract, a unilateral contract involves the exchange of a promise for a performance." *See Sateriale v. R.J. Reynolds Tobacco Co.*, 697 F.3d 777, 785 (9th Cir. 2012). "The offer is accepted by rendering a performance rather than providing a promise." *Id.* Plaintiffs fail to develop their unilateral contract theory or to articulate how the addendum was an "exchange of a promise for a performance."
[34] R. Doc. No. 56, at 11; R. Doc. No. 56-1, at 1.

Second, plaintiffs contend that the addendum along with the MRA, which plaintiffs do not dispute was sent to defendants in sufficient time for execution by the amended deadline, nonetheless is ineffective because the addendum only modified *some* MRAs–but not defendants' MRA. Plaintiffs' argument depends on the first paragraph of the addendum, which states:

> This document shall serve as an addendum to certain provisions contained in the Mutual Release Agreements ("MRAs") which are attached as Exhibit "G" to the Settlement Agreement and General Mutual Release Re: Robert/BH.[35]

Plaintiffs submit a copy of what they contend is the "Exhibit G" referred to in the addendum. Exhibit G consists of over 400 pages of copies of other MRAs executed in favor of other entities, but it does not include the MRA in favor of GS Levine/Arthur Gallagher & Co.[36] According to plaintiffs, because the addendum refers to MRAs in Exhibit G, and because defendants' MRA is not listed in Exhibit G, the addendum does not modify defendants' MRA.[37]

If plaintiffs are correct, an absurd result follows: if only MRAs in "Exhibit G" can be modified by the addendum, then in April 2015 defendants received an MRA that had already expired and could not be accepted, along with an addendum that did nothing to resuscitate it. Plaintiffs have not persuaded the Court that there is a genuine issue of material fact with respect to whether such an absurd course of events in fact occurred.

The undisputed facts are that the MRA and the addendum, both having been executed by Namer, were sent to defendants in April 2015, after the MRA (without the addendum) had expired, along with a cover letter inviting plaintiffs to sign by April 30, 2015. Plaintiffs utterly fail to explain why they would send an expired MRA that could not be accepted and executed, or why the

---

[35]R. Doc. No. 37-3, at 1.
[36]R. Doc. No. 44-2, *et seq.*
[37]R. Doc. No. 44, at 3-5, 11.

11

documents should be interpreted to result in that absurd consequence. To the contrary, pursuant to California law, "[a]n interpretation which gives effect is preferred to one which makes void." Cal. Civ. Code § 3541.[38]

Second, the reference to "Exhibit G" in the addendum is hardly a clear statement that the addendum applies to some subset of MRAs *but not to* defendants' MRA. Rather, the addendum plainly states that it applies "to each of the MRAs," and that "the releases contained in ***any*** MRA signed by a Releasee" by April 30, 2015 will be effective.[39] The plain broader language applying the addendum to "***any*** MRA" contradicts plaintiffs' assertion that the addendum governs only a subset of MRAs.

Accordingly, the Court concludes that the only reasonable interpretation of the addendum is that set forth in its plain language: that "the releases contained in ***any MRA*** signed by a Releasee on or before *April 30*, 2015, shall be valid and effective pursuant to the remaining terms of the MRAs."[40] This conclusion is consistent with the joint submission of the MRA and addendum to defendants as a unit that would be a nullity if the addendum did not modify the MRA. The Court concludes as a matter of law that the addendum is effective, that defendants timely executed the MRA, and that upon execution the MRA became effective and plaintiffs' claims were released.

**C.      Other Matters**

During the pendency of this motion for summary judgment, plaintiffs filed a motion to amend the scheduling order and for leave to file a second amended complaint "intended to reorganize and

---

[38]Louisiana law likewise dictates that "[a] provision susceptible of different meanings must be interpreted with a meaning that renders it effective and not with one that renders it ineffective." La. Civ. Code art. 2049.
[39]R. Doc. No. 37-3, at 1 (emphasis added).
[40]R. Doc. No. 37-3, at 1 (emphasis added).

clarify the factual allegations and legal claims at issue in this case, and to bring the pleadings in line with developments subsequent to the filing of the First Amending and Supplemental Petition for Damages."[41] The Court's scheduling order set a deadline of December 4, 2015, for filing amendments to pleadings.[42] The Court does not find that extension of that deadline and leave to file an amended complaint at this stage of the proceedings is warranted. However, even if the Court were to grant the motion and allow plaintiffs to amend their complaint, such amendment would be futile. The Court has reviewed the proposed pleading and concludes that it does not contain any new factual allegations or legal theories asserting any claims that are not also barred by the enforceable release. Accordingly, as the proposed amendment would be futile, the motion is denied. *See, e.g.*, *Adams Family Trust v. John Hancock Life Ins. Co.*, 424 F. App'x 377 (5th Cir. 2011) (affirming denial of motion for leave to amend as futile because "amending the complaint would not have enabled the Trust to defeat summary judgment").

Furthermore, on this date the Court held a telephone status conference with counsel for all parties. The Court advised counsel that the Court intended to grant defendants' motion for summary judgment and asked counsel for defendants whether defendants intend to proceed with their counter-claims against plaintiffs based on plaintiffs' breach of the MRA. Such counter-claims are not a subject of the motion for summary judgment. Counsel for all defendants represented that they would consult their clients and notify the Court. Subsequently, counsel for all defendants contacted the Court and represented that defendants will voluntarily dismiss their counter-claims without prejudice.

---

[41]R. Doc. No. 65-1, at 4.
[42]R. Doc. No. 8, at 2.

13

## CONCLUSION

**IT IS ORDERED** that defendants' motion for summary judgment is **GRANTED** and that all of plaintiffs' claims against defendants are **DISMISSED WITH PREJUDICE**.

**IT IS FURTHER ORDERED** that plaintiffs' motion for leave to file a second amended complaint is **DENIED.**

**IT IS FURTHER ORDERED** that defendants' counter-claims based on plaintiffs' breach of the MRA are **DISMISSED WITHOUT PREJUDICE**.

New Orleans, Louisiana, April 6, 2016.

_____
**LANCE M. AFRICK**
**UNITED STATES DISTRICT JUDGE**